IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANTOINE YOUNG,                              *
                    Plaintiff,
          v.                                *          CIVIL ACTION NO. DKC-13-3799

SECRETARY, DEPARTMENT OF PUBLIC   *
SAFETY AND CORRECTIONAL SERVICES,
Et al.,                                     *
                    Defendants.
                                          ***

## MEMORANDUM OPINION

Pending is a Motion to Dismiss, or in the Alternative Motion for Summary Judgment (ECF Nos. 27), filed by Defendants Secretary, Department of Public Safety and Correctional Services, Gary D. Maynard, J. Michael Stouffer, J. Phillip Morgan, joined by Hearing Officer John Sandstrom and Correctional Officer II Steven A. Wilson (ECF No. 33).  Plaintiff has responded.[1]  ECF Nos. 31, 32 & 35.  Upon review of the papers and exhibits filed, the court finds an oral hearing in this matter unnecessary.  *See* Local Rule 105.6 (D. Md. 2014).  For the reasons stated below, Defendants' dispositive motion will be granted.

## Background

Antoine Young is an inmate held at the Western Correctional Institution ("WCI").  Plaintiff alleges that on April 11, 2011, he received a notice of an inmate rule violation charging him with assault on another inmate and possession of a weapon.  ECF No. 1, p. 4.  Plaintiff states that his clothes were confiscated during the investigation, and Officer Clark advised that everyone

---

[1]     Although Plaintiff completed a U.S. Marshal form for service upon Defendant D. Harrison Pratt (the Administrative Law Judge who heard Plaintiff's Inmate Grievance), which was returned "served" on November 14, 2014 (ECF Nos. 38 & 40), Pratt has not responded to the Complaint.  A review of the return, which does not indicate that the summons was mailed restricted delivery, does not make clear whether Pratt was properly served with the Complaint which was sent to a business address and does not appear to have been signed for by Pratt.  ECF No. 40.  Even if Pratt had properly been served with the Complaint, Plaintiff's claim against him would be subject to dismissal as the defense of absolute immunity extends to "officials whose special functions or constitutional status requires complete protection from suit."  *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982).  Members of the executive branch who conduct administrative adjudicatory proceedings and who are functionally comparable to judges are entitled to absolute immunity.  *Butz v. Economou, 438 U.S. 478* (1978).

involved in the incident had what appeared to be blood on their clothes.  Clark never stated he actually saw what happened, but merely saw a group of inmates surrounding another inmate. Clark never saw Plaintiff actually assault another inmate or possess a weapon.  Plaintiff maintains that the only evidence was the confiscated clothing.  *Id.*  On April 18, 2011, Plaintiff appeared before Hearing Officer Sandstrom.  Clark testified that he did not say that he saw Plaintiff assault another inmate or possess a weapon.  Plaintiff asked to produce the confiscated clothes but his request was denied.  He was found guilty of the rule infractions.  *Id.*

Plaintiff claims that on May 31, 2011, Defendant Wilson came to his cell door and stated that his property and clothing were unallowable and would be confiscated.  *Id.*, pp. 4-5.  Plaintiff asked why, because the items were allowable since they were not contraband.  Wilson replied that Plaintiff "should not have got a ticket and ...shouldn't have got [him]self more than 180 days." *Id.*, p. 5.

Plaintiff alleges that Gary D. Maynard, J. Michael Stouffer, J. Philip Morgan, and D. Harrison Pratt were all aware of Plaintiff's complaints regarding his adjustment hearing and the confiscation of his property, but took no corrective action. ECF Nos. 5, 7, 10.

As relief Plaintiff seeks reinstatement of his lost good conduct credits, damages of $25 per day for each day spent on lock up, and $5,000 for the confiscation of his property.  ECF No. 1, p. 4.

The record evidence demonstrates that on April 11, 2011, as inmates were returning from breakfast, inmate Mathew Blackburn was surrounded by four other inmates, including Plaintiff, and assaulted.  ECF No. 27, Ex. 1; Ex. 1-2.  Clark observed a group of inmates surrounding Blackburn, who then fell to the ground.  *Id.*, Ex. 1-2.  Officers responded to the area, separated the inmates, and handcuffed the inmates who had been surrounding Blackburn, including Plaintiff.

*Id.* Blackburn's injuries suggested some type of weapon was used in the assault. *Id*; Ex. 1-3. Officers White, Bosley, and Clark frisked the inmates and searched the area but no weapon was found. *Id.* Plaintiff's sweatpants and shirts were confiscated as evidence during the investigation of the assault. *Id.*, Ex 1-5. During the investigation it was believed that all involved in the assault had blood on their clothes which would be used as additional evidence of their involvement in the incident during later adjustment hearings. No blood was found on Plaintiff's clothes. *Id.*, Ex. 1-2.

On April 13, 2011, Plaintiff was served with a Notice of Inmate Rule Violation and Disciplinary Hearing Notice. *Id.*, Ex. 1-2. The Notice advised Plaintiff of the claims against him, his right to representation at the hearing, his right to present evidence, and his right to present witnesses in his defense. *Id.* Plaintiff was charged with violating rule 102 (assault or battery on another inmate) and rule 105 (possession of a weapon or an article modified into a weapons). *Id.* Plaintiff's disciplinary hearing was held before Hearing Officer John Sandstom on April 18, 2011. *Id.*, Ex. 1-6. Plaintiff pled not guilty and waived his right to representation and the use of witnesses. *Id.* He sought to admit his clothing as evidence, but the clothing had been lost. He testified that no blood was on his clothing. *Id.*, Ex. 1-6, p. 2.

During the hearing, the photographs of Blackburn's injuries were presented along with Clark's testimony regarding the assault. *Id.*, p. 3. The Hearing Officer determined that Plaintiff was part of the group of inmates who participated in the assault on Blackburn. *Id.*, p. 3. He was found guilty of both rule violations and sentenced to one year of disciplinary segregation and the loss of 120 good conduct credits for the rule 102 violation. *Id.*, Ex. 1-6, p. 4. He was also sentenced to a one year concurrent term of disciplinary segregation for violation of rule 105. *Id.* Plaintiff was also sanctioned with the loss of visitation privileges for one year beginning April 18,

2011, which was not particularly designated to either rule violation.  The Reduction in Violence Committee, reviewed Plaintiff's case and imposed an additional sanction of 60 days cell restriction.  *Id.*, Ex. 1.  Plaintiff appealed the ruling to the Warden, who affirmed the Hearing Officer's decision and sanctions.  *Id.*

Plaintiff filed an Inmate Grievance Office ("IGO") Appeal of the disciplinary hearing on June 3, 2011.  *Id.*, Ex. 3.  A video hearing on Plaintiff's appeal was conducted by Administrative Law Judge ("ALJ") D. Harrison Pratt on August 24, 2011.  *Id.*  Plaintiff presented two issues: whether the hearing officer's finding of guilty was based on substantial evidence; and whether the sanctions imposed were excessive.  *Id.*, Ex. 3, Ex. A.

Judge Pratt found there was "significant evidence" of Plaintiff's involvement in the attack *Id.*, p. 5.  Plaintiff was among the inmates Clark witnessed surrounding the victim "prior to him falling to the ground injured and bloody."  *Id.*  Plaintiff's presence allowed for a reasonable inference that Plaintiff was complicit in the attack.  Plaintiff's testimony that there was no blood on his clothes was insufficient to overcome the evidence supporting the finding that he participated in the attack.  *Id.*  Pratt found, however, that the testimony and evidence was insufficient to prove Plaintiff possessed a weapon.  Pratt noted that no weapon was found, and concluded that the injuries sustained by Blackburn could have been caused by fists, which did not meet the definition of a weapon.  He concluded that the rule 105 violation must be vacated and Plaintiff's sanctions adjusted accordingly. *Id.*

As Plaintiff's disciplinary segregation sanction for violation rule 105 was to run concurrent to the sentence imposed for the rule 102 violation, dismissal of the weapon violation did not change the number of days Plaintiff was sanctioned to disciplinary segregation.  *Id.*  Under Maryland regulations, the rule 102 violation only allows for loss of visitation for up to 180

days; as such, Plaintiff's sanctioned loss of visitation was amended from one year to 180 days. *Id*. The sanctions imposed by the RIV regarding cell restriction were affirmed by Pratt. *Id*. Pratt's order regarding adjustment of Plaintiff's sanctions was complied with by the institution on February 27, 2012. *Id*., Ex.1; Ex. 4.

## Standard of Review

A.   Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id*. at 563. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

B.   Motion for Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact.  No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

## Analysis

A.    Supervisory Liability

The law in the Fourth Circuit is well established that the doctrine of *respondeat superior* does not apply in § 1983 claims.  *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983).  Liability of supervisory officials "is not based on ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'"  *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001) citing *Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984).  Supervisory liability under § 1983 must be supported with evidence that:  (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.  *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994).

Plaintiff's claims against Secretary Maynard, Warden Stouffer, and Warden J. Phillip Morgan, are that they were involved in reviewing Plaintiff's disciplinary proceedings and/or signed off on the RIV's recommendation. Such claims, lacking in personal involvement in are insufficient to state a claim against Defendants Maynard, Stouffer and Morgan. Plaintiff has pointed to no action or inaction on the part of these Defendants that resulted in a constitutional injury, and accordingly, his claims against Maynard, Stouffer and Morgan shall be dismissed. This determination, however, does not end the court's inquiry.

B.      Due Process in Disciplinary Proceedings

In prison disciplinary proceedings which bring the possible loss of good conduct credits, a prisoner is entitled to certain due process protections. *See Wolff v. McDonnell*, 418 U.S. 539, 564 (1974). These include advance written notice of the charges against him, a hearing, the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision. *Wolff*, 418 U. S. at 564-571. Substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Correctional Institute v. Hill*, 472 U.S. 445, 455 (1985).

Plaintiff received all the process he was due. He was given timely advance written notice of the infraction and permitted to attend the disciplinary hearing. The hearing officer's determination of guilt was based upon some evidence, i.e. review of Plaintiff's testimony, the officer's testimony, the written record, and photographs of the victim.

Plaintiff's contention that he was denied the opportunity to present evidence does not state a due process violation where, as here, the hearing officer and later the ALJ both credited Plaintiff's testimony that no blood was found on this clothes. *Piggie v. Cotton*, 344 F. 3d 674, 677 (7th Cir. 2003) (no right to present evidence which would be irrelevant, repetitive, or unnecessary.) Although Plaintiff's clothes were apparently lost, the Hearing Officer and ALJ

both found, as Plaintiff testified, that no blood was found on his clothes.   Nonetheless, both fact-finders found his proximity to the attack sufficient evidence of his participation in the assault.

Moreover, to the extent Plaintiff alleges he was denied due process during his initial adjustment hearing as to the lack of evidence to substantiate the weapon charge, his claim is unavailing.   The question is whether the IGO's decision reversing the first adjustment hearing officer's decision cured the due process violation committed by the adjustment hearing officer.   A number of courts have examined this issue and concluded that "there is no denial of due process if the error the inmate complains of is corrected in the administrative appeal process." *Morisssette v. Peters*, 45 F.3d 1119, 1122 (7th Cir. 1995) (citing *Harper v. Lee*, 938 F.2d 104, 105 (8th Cir. 1991)); *Young v. Hoffman*, 970 F. 2d 1154, 1156 (2d Cir. 1992) ("administrative reversal constituted part of the due process protection [inmate] received, and it cured any procedural defect that may have occurred."   It is well established that the revocation of good conduct credits may not take place without first providing the inmate with the protections of due process.   *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974).   In the instant case, however, the IGO's reversal of the weapons charge sanctions had no effect on Plaintiff's disciplinary segregation time or loss of good conduct credit, which was not designated to a particular offense.   Thus, any due process violation that took place at Plaintiff's first adjustment hearing was cured by the adjustment of his sanctions.

C.   Loss of Property

While Defendants fail to address Plaintiff's claim that his property was improperly confiscated, this claim is nonetheless subject to dismissal.   In the case of lost or stolen property, sufficient due process is afforded to a prisoner if he has access to an adequate post-deprivation remedy.   *See Parratt v. Taylor*, 451 U. S. 527, 542-44 (1981), *overruled on other grounds by*

*Daniels v. Williams*, 474 U. S. 327 (1986).  The right to seek damages and injunctive relief in Maryland courts constitutes an adequate post deprivation remedy.[2]  *See Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982).[3]

### Conclusion

The dispositive motion filed on behalf of Defendants will be granted.[4]  A separate Order follows.


Date:  February 26, 2015            _____/s/_____
                                    DEBORAH K. CHASANOW
                                    United States District Judge

---

[2]      Plaintiff may avail himself of remedies under the Maryland's Tort Claims Act and through the Inmate Grievance Office.

[3]      Although *Juncker* dealt with personal injury rather than property loss, its analysis and conclusion that sufficient due process is afforded through post deprivation remedies available in the Maryland courts also applies to cases of lost or stolen property, given *Juncker's* reliance on *Parratt* in dismissing Plaintiff's due process claim.

[4]      Having found no constitutional violation, the court need not address Defendants' claim that they are entitled to qualified immunity.